IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

TRACY PIKE,

    Plaintiff,

vs.

MARVIN GUIA; JEFFREY COUGHLIN;
RAYMOND HOLT; HARLEY LAPPIN;
NICK MAKRIDES, and FEDERAL
BUREAU OF PRISONS,

    Defendants.

CIVIL ACTION NO.: CV207-039

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Tracy Pike ("Plaintiff"), who is currently incarcerated at Federal Satellite Low in Jesup, Georgia ("FSL Jesup"), filed a cause of action pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). Defendants filed a Motion to Dismiss, or in the alternative, for Summary Judgment. Plaintiff responded, and Defendants filed a Reply. Plaintiff filed a Statement of Material Facts. Defendants filed a Surreply. Plaintiff filed a Supplemental Response. Upon review, Defendants' Motion[1] should be **GRANTED**.

---

[1] The parties submitted documentation in support of their positions, and the undersigned utilized this documentation in reaching his recommendations. Accordingly, Defendants' Motion is converted to a Motion for Summary Judgment. A court must ordinarily notify the parties of such a conversion and allow the parties ten (10) days to supplement the record. Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002). However, "when a party proves through its actions that it has notice of the conversion [from a Motion to Dismiss to a Motion for Summary Judgment], any failure to notify the party is rightly deemed harmless." Id. at 1268. Given the nature of the filings the parties have made, the Court need not have notified the parties of this conversion.

## STATEMENT OF THE CASE

Plaintiff alleges that he is unable to chew his food because he has only five teeth, none of which are molars, and that he requested dentures from Defendant Guia, the dentist at FSL Jesup. Plaintiff contends that when he tries to eat, his gums bleed and he experiences severe pain and headaches. Plaintiff contends that, despite knowledge of this serious medical need, Defendant Guia refused to provide dental treatment for Plaintiff. Plaintiff also contends that Defendants Holt, Lappin, and Makrides have instituted a policy for inmate dental care by which serious needs, like those he has, are not considered. Plaintiff further contends that Defendant Coughlin has delayed his treatment from an optometrist even though Plaintiff claims he is legally blind without glasses.

Defendants contend Defendants Guia and Makrides are commissioned officers of the United States Public Health Service, and, as such, are immune from a Bivens suit. Defendants also contend Plaintiff cannot sustain his claims against the Federal Bureau of Prisons pursuant to the Administrative Procedures Act ("APA"). Defendants also contend Defendants Holt and Lappin cannot be held liable based on a theory of supervisory liability. Finally, Defendants assert Defendant Coughlin has not been deliberately indifferent to Plaintiff's serious medical needs.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v.

Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

I. **Plaintiff's Claims Against Defendants Guia, Makrides, and Holt**

Defendants allege that Defendants Guia and Makrides are commissioned officers of the United States Public Health Service and are immune from a <u>Bivens</u> suit based on 42 U.S.C. § 233(a).[2] Defendants also allege that the exclusive remedy for claims arising from the medical functions of commissioned officers of the Public Health Service is a tort claim against the United States pursuant to the Federal Tort Claims Act. Defendants contend Defendant Holt should be dismissed because Plaintiff's claims against him are based solely on his supervisory position.

Plaintiff asserts the Defendants are correct that Defendants Guia and Makrides should be dismissed pursuant to 42 U.S.C. § 233(a). Plaintiff also asserts Defendant Holt, in his capacity as the Regional Director with the Bureau of Prisons, should be dismissed because he had no personal involvement in Plaintiff's medical treatment and Defendant Holt was not involved in promulgating any policies or directives concerning dental and medical care for inmates at FSL Jesup.

As Plaintiff concedes that Defendants Guia, Makrides, and Holt should be dismissed from this cause of action, these portions of Defendants' Motion should be granted. Plaintiff's claims against Defendants Guia, Makrides, and Holt should be dismissed.

---

[2] "The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim." 42 U.S.C. § 233(a).

## II. Plaintiff's APA Claims

Defendants contend it is not apparent how Plaintiff's APA claim, which is solely for injunctive and equitable relief, is viable. Defendants aver Plaintiff's claim provides nothing more than an assertion of liability and lacks any discussion of how the APA applies or why the requested injunctive relief can be based on the APA.

Plaintiff alleges the Government "has not read or fails to comprehend the judicial review provision of the APA, 5 U.S.C. § 702, which provides for relief other than money damages." (Doc. No. 20, p. 8). Plaintiff also alleges the APA provides for injunctive relief and that, accordingly, his APA claim is viable.

Section 702 of Title 5 of the United States Code provides, in relevant part, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." Despite Plaintiff's bare assertion to the contrary, there is no evidence before the Court that he is entitled to injunctive relief against the Federal Bureau of Prisons based on the APA. Thus, Plaintiff's claims against the Federal Bureau or Prisons should be dismissed.

### III. Plaintiff's Claims Against Defendant Lappin

Defendant Lappin[3] contends Plaintiff's claims against him are based on a theory of supervisory liability due to the promulgation of a policy which does not require the Bureau of Prisons to replace an inmate's teeth. Defendant Lappin asserts there was no history of widespread abuse which put him on notice that he needed to act and he failed to do so. Defendant Lappin also asserts Plaintiff does not contend that he or another unnamed supervisor directed their subordinates to act unlawfully or that he failed to stop them from so doing.

Plaintiff avers Defendant Lappin's liability is based on his promulgation of a policy which resulted in the alleged deliberate indifference to Plaintiff's dental needs. Plaintiff asserts Defendant Lappin's promulgation of the policy which did not allow for the replacement of his teeth and delaying the extraction of his teeth caused him to lose weight and his gums to bleed, as he was forced to chew food with his few remaining teeth.

Defendant Lappin contends that he, as a non-dentist, relied on medical professionals such as Defendants Guia and Makrides, to craft policies for the dental care of inmates. Defendant Lappin notes that Defendant Guia asserts in his Declaration that Plaintiff has not made any requests to provide him with dentures after October 2006.

Plaintiff responds that he has not found any case law to support Defendant Lappin's contention that, because he relied on others to promulgate policies, his liability

---

[3] Given the undersigned's recommended disposition of Plaintiff's claims against Defendants Guia, Makrides, and the Federal Bureau of Prisons, the only remaining claims for the Court's disposition are Plaintiff's claims against Defendants Lappin and Coughlin.

is lessened somehow when his subordinates carry out the policies, which resulted in Plaintiff's injury. Plaintiff asserts Dr. Guia "refused to replace [his] teeth based on that policy promulgated by Defendant Lappin." (Doc. No. 26, p. 2). Plaintiff alleges it can be argued that the policy which does not require the replacement of inmates' teeth was promulgated for reasons other than medical or dental reasons. Plaintiff also alleges that, if Defendant Guia relied on Program Statement P6400.02 in refusing to replace Plaintiff's teeth and that refusal resulted in him experiencing inordinate pain, then it can be argued that a causal connection exists between Defendant Lappin's policy and Plaintiff's injuries. Plaintiff contends that, if this policy was promulgated for non-medical reasons such as budgetary concerns, Defendant Lappin cannot shift liability to the dental staff with whom he consulted. Finally, Plaintiff contends there is a question whether Defendant Lappin knew at the time he promulgated Program Statement P6400.02 that the failure to provide teeth to a toothless inmate would result in injuries such as pain and the inability to chew food.

"It is well established in this circuit that supervisory officials are not liable under Bivens for unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). However, supervisors "'can be liable . . . when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of plaintiff[], and his conduct was causally related to the constitutional violation committed by [the] subordinate.'" Id. (quoting Greason v. Kemp, 897 F.2d 829, 836 (11th Cir. 1990)). "A causal connection may be established when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged

deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Matthews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal citation omitted).

Defendant Lappin asserts in his Declaration that he is the Director of the Bureau of Prisons. Defendant Lappin states he relies on members of the Bureau of Prisons' dental staff, who are located on-site at federal penal institutions, to provide direct and appropriate dental care to inmates. Defendant Lappin also states he relies on dental and administrative staff to assure inmates are being provided with adequate and appropriate dental care. (Defs.' Ex. 4, ¶¶ 2-3). Defendant Lappin avers national policies were formulated to provide guidance to staff regarding the provision of inmate dental care and that these policies were formulated in conjunction with members of his staff, including dentists. Defendant Lappin also avers Program Statement P6400.02 was formulated and issued under his authority after review by his staff, including dentists, to assure inmates would be provided with appropriate dental care. Defendant Lappin further avers this is the only involvement he has with Plaintiff's dental care. (Id. at ¶¶ 4-6).

Defendant Guia, who is the Chief Dental Officer at the Federal Correctional Institution, also submitted a Declaration, and he asserts a review of Plaintiff's medical records reveals he performed an Admission and Orientation screening examination of Plaintiff on September 26, 2006. Defendant Guia contends he explained to Plaintiff how to receive routine dental treatment and how to be seen at sick call for more urgent

problems. (Defs.' Ex. 1, ¶ 4). Defendant Guia asserts Plaintiff submitted an Inmate Request to Staff form requesting that he be placed on a waiting list to receive dentures because he claimed he was having problems eating, but did not state what those problems were. Defendant Guia also asserts he responded to Plaintiff's request three (3) days later and informed Plaintiff that he was placed on the hygiene and treatment list. Defendant Guia alleges he previously told Plaintiff that the first step to receive routine dental care, such as getting dentures, was to be seen for a cleaning, and then an evaluation would be made to determine Plaintiff's needs.[4] Defendant Guia contends that, if it were determined Plaintiff needed dentures, an order for the dentures would be processed. (Id. at ¶ 6). Defendant Guia also contends this is the only request Plaintiff made to be provided with dentures. (Id. at ¶ 7).

In addition, Defendant Makrides, the Chief Dental Officer for the Bureau of Prisons, filed a Declaration. Defendant Makrides asserts he assisted in the drafting of Program Statement P6400.02. According to Defendant Makrides, the need for dentures is not a dental emergency. Program Statement P6400.02 provides, according to Defendant Makrides, that removable partial dentures may be provided at the discretion of the institution's Chief Dental Officer but replacing missing teeth is not *required*. Defendant Makrides alleges, however, that if a dentist determined an inmate's health would be adversely affected by not having dentures or removable partial dentures, the inmate would have those provided to him. (Defs.' Ex. 2, ¶¶ 5-6).

---

[4] Defendant Guia asserts that Plaintiff was scheduled to be seen in the dental clinic on January 29, 2007, for a cleaning and then Defendant Guia would have examined him; however, Plaintiff refused the treatment because he was too sore. Defendant Guia states Plaintiff has not returned to the dental clinic or requested any dental services since that time. (Defs.' Ex. 1, ¶ 9).

Plaintiff has submitted evidence in support of his position that Defendant Lappin is liable based on more than a theory of supervisory liability. In his Affidavit, Plaintiff states Defendant Guia told him it would take two (2) years for Plaintiff to receive dentures. Plaintiff also states it was Defendant Lappin who promulgated Program Statement P6400.02, which he claims is a policy not to replace teeth. Plaintiff further states he has had pain and bleeding when he chews his food during his waiting time. (Pl.'s Aff., ¶ 2). Plaintiff avers he informed Defendant Guia, by way of an Administrative Remedy Request, that he had the "right to dentures because without them [he] experience[s] severe pain every time [he] attempt[s] to eat something" and that his "inability to chew is resulting in daily weight loss." (Doc. No. 27, pp. 1-2). Plaintiff contends Defendant Guia's response (drafted for the Warden's signature) indicated the Bureau of Prisons was not required to replace missing teeth, in accordance with Program Statement P6400.02. Plaintiff asserts, if Defendant Guia knew of his serious medical needs but refused to treat Plaintiff based on the policy Defendant Lappin promulgated, supervisory liability attaches to Defendant Lappin. (Id. at 2). Plaintiff also submitted the relevant page of Program Statement P6400.02, which states, "Removable partial dentures (RPD) may be provided at the [Chief Dental Officer's] discretion. The Bureau is not _required_ to replace missing teeth, regardless of when or where the teeth were removed." (Doc. No. 34, Att. A) (emphasis supplied). Finally, Plaintiff submitted the Declaration of Carlos Orengo, a fellow inmate, who states Defendant Guia examined him on January 8, 2008, because he has no teeth and wants the Bureau of Prisons to provide him with teeth. Mr. Orengo also states Defendant Guia informed him

that Bureau of Prisons' policy "does not allow [him] to provide [Mr. Orengo] with teeth." (Doc. No. 34, Att. B).

The evidence before the Court indicates that the dental staff at a federal penal institution is not *required* to replace the inmates' missing teeth, pursuant to Program Statement P6400.02. However, this evidence, by implication, indicates that an institution's dentist could examine an inmate and then determine that inmate needed to have his teeth replaced. The uncontradicted evidence before the Court is that Plaintiff was scheduled to have a cleaning and evaluation performed by dental staff, presumably to determine if Plaintiff needed dentures or some other dental treatment, and Plaintiff refused this treatment. It is of no consequence that the Bureau of Prisons is not *required* to replace inmates' missing teeth based on Program Statement P6400.02, which was promulgated by Defendant Lappin, in his capacity as the Director of the Bureau of Prisons. Even if Defendant Guia did not provide Plaintiff with dentures as he demanded and Defendant Guia's non-provision of the dentures were directly related to Program Statement P6400.02, there is no evidence this Statement directs dental staff not to provide inmates with dental care and treatment. Further, the Declaration of Carlos Orengo has no evidentiary value to support Plaintiff's contentions against Defendant Lappin. It is evident Plaintiff seeks to hold Defendant Lappin liable based solely on his supervisory position as the Director of the Bureau of Prisons. This portion of Defendants' Motion should be granted.

## IV. Plaintiff's Deliberate Indifference Claims

Defendant Coughlin, who was the Acting Health Services Administrator ("HSA"), asserts that Plaintiff's deliberate indifference claims amount to nothing more than

Defendant Coughlin's alleged failure to follow Plaintiff's advice about how to manage the "optometrist queue." (Doc. No. 17, p. 9). Defendant Coughlin contends that, even accepting as true Plaintiff's claims, Plaintiff's assertions amount to negligence at the most. Defendant Coughlin alleges Plaintiff did not diligently follow-up on issues with him. Defendant Coughlin also alleges Plaintiff's concerns were not ignored. In fact, Defendant Coughlin asserts Plaintiff was placed on the waiting lists to be seen and was not heard from thereafter with repeated related complaints.

Plaintiff avers Defendant Coughlin refused to provide him with immediate eye care for legal blindness, and it is this refusal which resulted in Plaintiff's pain and suffering and inability to engage in normal life activities. Plaintiff contends Defendant Coughlin was aware of his eye care needs and purposefully delayed Plaintiff's treatment for no legitimate medical reason. Plaintiff also contends Defendant Coughlin was aware of his claims because Defendant Coughlin prepared the response to Plaintiff's Administrative Remedy Request in which he stated he could not see up close or from a distance and requested to be seen by the optometrist during his or her next visit to FSL Jesup.

Defendant Coughlin contends, at the time he drafted the response to Plaintiff's Administrative Remedy Request, Plaintiff was examined by a Physician's Assistant just weeks before, and Plaintiff's vision was 20/40 corrected. Defendant Coughlin alleges this notation in Plaintiff's medical records indicates Plaintiff had glasses to wear. Defendant Coughlin also alleges Plaintiff was already on the list to be seen by the optometrist. Defendant Coughlin asserts Plaintiff knew he could be seen at sick call or request to be seen for emergency care at any time, but Plaintiff did not go to the Health

Services Department requesting to be seen with complaints related to a need for eyeglasses or any problems because of not having them, nor did institution staff report to him that Plaintiff was having problems caused by poor vision. Defendant Coughlin also asserts he told Plaintiff he could have glasses sent into the institution, but Plaintiff told him he did not have a current prescription. Defendant Coughlin further asserts he informed Plaintiff he could get reading glasses from the commissary. Finally, Defendant Coughlin asserts Plaintiff did not present any complaints about his need for glasses or alleged problems caused by poor eyesight after Defendant Coughlin responded to Plaintiff's Administrative Remedy Request.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 820 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105, 97 S. Ct. at 291). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he]

had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. Harris, 941 F.2d at 1505.

In his Declaration, Defendant Coughlin states that, in his capacity as the Acting HSA, he did not provide inmates with hands-on medical assessments, treatment, or care, and that he relied on the treating medical staff to make medical determinations for the inmates' treatment needs. Defendant Coughlin alleges he was responsible for various administrative matters concerning the Health Services Department and the provision of medical care to inmates. (Defs.' Ex. 5, ¶ 2). Defendant Coughlin avers that he prepared draft responses to inmates' Administrative Remedy Requests pertaining to medical issues for the Warden's signature, and, in so doing, would review an inmate's

medical file and/or consult with the medical staff as necessary to prepare his response to the request. (Id. at ¶ 3). Defendant Coughlin states he reviewed Plaintiff's medical file, which reveals a September 2006, medical examination; the notes from this examination reflected Plaintiff's vision was 20/40 corrected and that he was placed on the waiting list to be seen by the contract optometrist. Defendant Coughlin asserts Plaintiff filed an Inmate Request to Staff form on October 12, 2006, to be placed on a waiting list to see the optometrist for glasses, and a Health Information Technician responded less than a week later that Plaintiff was already on the waiting list. (Id. at ¶¶ 4-5). Defendant Coughlin also asserts Plaintiff has not returned to the Health Services Department requesting to be seen at sick call or on an emergency basis for his vision problems since his examination in September 2006. Defendant Coughlin avers he spoke with Plaintiff in September or October 2006 and advised him he could have eyeglasses sent into the prison and that eyeglasses were available at the commissary. (Id. at ¶¶ 6-7). Defendant Coughlin contends Plaintiff did not tell him he was legally blind without glasses and that he (Defendant Coughlin) was unaware of this contention until the instant cause of action was filed. Defendant Coughlin states he does not recall Plaintiff asking to be moved ahead of other inmates on the waiting list to see the optometrist or to have the contract optometrist see inmates more frequently. Finally, Defendant Coughlin states, since he is now aware of Plaintiff's specific issues, he has referred Plaintiff to the Health Services Department so that the medical staff can determine whether Plaintiff has a medical need which warrants Plaintiff being seen by an optometrist more quickly than other inmates. (Id. at ¶ 8).

Plaintiff asserts in his Affidavit that he did not return to the Health Services Department because he was placed on a waiting list to see the optometrist in September 2006, and he submitted a follow-up Inmate Request to Staff form on October 12, 2006, to be placed on the optometrist waiting list. (Pl.'s Aff., ¶ 1). Plaintiff also asserts he contests Defendant Coughlin's statement that he was not aware of Plaintiff's legal blindness because Plaintiff alleges he spoke with Defendant Coughlin on two (2) occasions after October 12, 2006, and asked Defendant Coughlin about the delay in scheduling his appointment with the optometrist and told him that he "urgently needed to see the eye doctor because" he "could not see without glasses and was experiencing severe headaches." (Id.) Plaintiff contends there is a genuine issue of material fact as to whether Defendant Coughlin "was aware of Plaintiff's serious medical need for glasses but failed to promptly take action resulting in Plaintiff's claimed injuries." (Doc. No. 27, p. 3).

Contrary to Plaintiff's assertions, there is no evidence Defendant Coughlin was aware of his claim that he is "legally blind" until after this lawsuit was filed. Defendant Coughlin does not dispute Plaintiff filed an Administrative Remedy Request pertaining to his need for eyeglasses, but this is hardly the same as Plaintiff creating a genuine issue of material fact as to whether Defendant Coughlin was deliberately indifferent to his serious medical needs. The evidence before the Court reveals Plaintiff made requests to see the optometrist, and staff at FSL Jesup placed him on the waiting list to do so; in fact, Plaintiff admits he was placed on the waiting list to see the optometrist after his initial request was made. Plaintiff does not dispute Defendant Coughlin's position as the Acting HSA was anything more than an administrative position, that Defendant

Coughlin offered other suggestions to Plaintiff for getting glasses, that Plaintiff has not gone back to the Health Services Department requesting treatment for his vision problems since October 12, 2006, or that Defendant Coughlin has referred Plaintiff to the Health Services Department for a determination of whether Plaintiff should be seen by the optometrist more quickly than other inmates. The most Plaintiff has shown is that he asked Defendant Coughlin on two (2) occasions in more than a year's time about his desire to see an optometrist. Plaintiff has failed to show the existence of a genuine issue of material fact as to whether Defendant Coughlin was deliberately indifferent to Plaintiff's serious medical needs for his vision problems. Defendants' Motion on this claim should be granted.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion be **GRANTED** and Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 28th day of February, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE